UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTONY STARK | : |
|     Plaintiff | : |
| v. | :    Civil Action No. 1:19-12109-ADB |
| LONNIE G. BUNCH, SECRETARY, SMITHSONIAN INSTITUTION, | : |
|     Defendant | : |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

Defendant has filed a motion to dismiss, asking the Court to throw out Plaintiff's case before Plaintiff is allowed to serve a single discovery request. To support this request, Defendant has cited five distinguishable, *unpublished* appellate opinions from other circuits that do not state First Circuit law. Indeed, all of these opinions were rendered on motions for summary judgment, with the benefit of a full record, not, as Defendant seeks here, on a motion to dismiss. As more fully set forth below, Defendant's motion must be denied.

**Factual Background**

Plaintiff Antony ("Tony") Stark went to work as an Astronomer for the Smithsonian Astrophysical Observatory ("SAO") in 1991, when he was 38 years old. At the time, Dr. Stark had been a member of the Technical Staff of Bell Laboratories for 12 years, and was a Lecturer in Astrophysical Sciences at Princeton University. He held two National Science Foundation ("NSF") grants, one of which was to build a permanent telescope and observatory in Antarctica.

When Dr. Stark first applied to work at the SAO, he was told by then-Director Irwin Shapiro that he should not seek employment at the SAO as a federal-General Schedule ("GS") employee because there was then a policy that federal scientists could not hold NSF grants (as Dr. Stark then did). Director Shapiro offered to hire him as a "Smithsonian Trust" employee, which Shapiro said had parallel requirements and benefits (including job security) to federal GS scientists. Director Shapiro assured Dr. Stark that this position as a "Smithsonian Trust" employee would be "as secure as tenure," promising that should the NSF cease to fund Dr. Stark's work in the future, Dr. Stark could either be transitioned to a federal GS position or fully funded by the Smithsonian Trust. It was on the basis of this assurance that Dr. Stark accepted a position at the SAO, rather than one of several offered positions as a tenured Professor of Astronomy.

For the next 25 years, Dr. Stark's work flourished at the SAO, and he and his projects brought in millions of dollars in federal grants. Among other things, his Antarctic Submillimeter Telescope and Remote Observatory ("AST/RO") project funded 18 post-doctoral appointments and a Project Manager position at the SAO. He was one of five Co-Investigators of the South Pole Telescope ("SPT"), which began operations in 2007 and became widely recognized as a premier observational instrument. In 2013, Dr. Stark collaborated in the optical design of a third-generation detection system that increased the sensitivity of the SPT by a factor of 20. Thereafter, Dr. Stark and a colleague proposed and won an NSF grant to build the Parallel Imager for Southern Cosmology Observations ("PISCO") in Chile, which became the world's fastest and most accurate ground-based astronomical camera.

In the late 2000's, recognizing that the instrument-building grants for the SPT and other instruments would eventually run out, Dr. Stark approached SAO Director Charles Alcock about providing salary support for his work in *using* these instruments for the observational purposes for which they were built—that is, the detection and characterization of thousands of clusters of galaxies. In other words, after successfully pursuing an astronomical research program of national importance for decades, Dr. Stark asked the SAO for a few years of salary support in order to complete the research on identifying galaxy clusters for which he had spent decades laying the groundwork.

However, contrary to Director Shapiro's original promise, the SAO refused. The only option offered by Director Charles Alcock was that Dr. Stark should apply for and compete with other scientists for a federal-GS position at the SAO. **In other words, Dr. Stark was told, in essence, thanks a lot, old man, for all the years of grants you brought in. Now you can compete with younger scientists to keep your job.**

In 2009, Dr. Stark applied for a GS-13 federal scientist position at the SAO. He was not selected for the position, and simply told to re-apply. In March 2016, at age 62, Dr. Stark applied again for two federal scientist positions at the SAO, one at the GS-14 level and one at the GS-15 level. Again, he was not selected for either position, even though he was found to be among the best qualified for the positions. Instead, in September 2016, Dr. Alcock announced that the SAO would be interviewing six other candidates for what he described in an email as the "mid-career" scientist position. The scientists selected for interviews were all in their forties and fifties. When Dr. Stark protested to Dr. Alcock that he was not included among the finalists for the "mid-career" federal scientist position, Dr. Alcock proceeded to hire none of the other scientists, yet

did not allow Dr. Stark to continue to compete for the position, which Dr. Alcock left unfilled.

In sum, after the SAO collected millions of dollars in grants brought in by Dr. Stark over more than two decades, it put Dr. Stark, now an accomplished 62-year old Senior Astronomer with consistently strong evaluations, in the position of having to compete to continue in his job with a group of younger, mid-career scientists, and then did not select him. By not hiring Dr. Stark as a federal scientist, the SAO has also left him with little salary for years.

### I. Plaintiff Has Stated a Claim of Age Discrimination and is Entitled to Discovery to Prove the Agency's Pretext.

Under the burden-shifting paradigm of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the plaintiff in an age discrimination case is required to establish a number of elements in order to state a *prima facie* case. However, the federal circuits differ about what those elements are. In some circuits, the required elements are that: (1) the plaintiff is forty years of age or older; (2) the defendant took an adverse employment action against her; (3) she was qualified for the position in question; and (4) she was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. *See Burton v. Telefex, Inc.,* 707 F.3d 417, 426 (3d Cir. 2013).

In the First Circuit, however, the court has held expressly that the fourth element is not required. In *Freeman v. Package Machine Co.,* 833 F.2d 1331 (1st Cir. 1988), the Court (Selya, J.) ruled "expressly" that "replacement by a younger person (or one outside the protected age group) is not an element of the plaintiff's prima facie case in an ADEA

suit." *Id.* at 1335 (emphasis added), *citing Loeb v. Textron,* 600 F.2d 1003, 1019 (1st Cir. 1979).[1] Although the Defendant here cites two, more recent First Circuit decisions in his brief, the fourth element was not at issue in either case. *Clifford v. Barnhart,* 449 F.3d 276 281 (1st Cir. 2006)(Rehabilitation Act case in which another person, who was not disabled was hired); *Gu v. Boston Police Dep't,* 312 F.3d 6, 11 (1st Cir. 2002)(gender discrimination case in which another person, a male, was hired).

The Defendant actually relies on five, distinguishable unpublished decisions from other circuits to suggest that the court may dispose of this case on a motion to dismiss.[2] All five cases are distinguishable because all required the prima facie element (that a position was filled) that is not required in the First Circuit. Three of the five decisions are distinguishable because they did not involve age discrimination (and thus, by definition, could not involve whether a younger person was hired). Perhaps most importantly, *none* of the five decisions entailed a ruling on a motion to dismiss; all five cases were decided at the summary judgment stage, after discovery and the development of a full record.

---

[1] As explained in H. Eglit, Age Discrimination § 7.49 (2019 update), "Not all circuits even have a 'replacement' prong in their Age Discrimination in Employment Act (ADEA) prima facie formulation." In addition to the First Circuit, Eglit cites decisions from the Fourth, Eighth, Tenth and Eleventh Circuits that do not require it. *See Halperin v. Abacus Technology Corp.,* 128 F.3d 191, 201 (4th Cir. 1997); *Anderson v. Durham D& M, LLC,* 606 F.3d 513 (8th Cir. 2010); *Jones v. Oklahoma City Public Schools,* 617 F.3d 127 (10th Cir. 2010); *Stanfield v. Answering Service, Inc.,* 867 F.32d 1290, 1294 (11th Cir. 1989).

[2] To be precise, one of the five decisions relied upon by the Defendant is a published decision, *Kulumani v Blue Cross Blue Shield Ass'n,* 224 F.3d 681 (7th Cir. 2000). *Kulumani* is distinguishable from this case in numerous respects. In addition to the fact that *Kulamani* was a race, not an age, discrimination case, that the Seventh Circuit required an prima facie element that the First Circuit does not require, and that the decision was rendered at the summary judgment stage, not on a motion to dismiss, *Kulumani* is distinguishable from this case because there was evidence in the record that the plaintiff was not promoted due to an across the board hiring freeze that applied to all positions. There is absolutely no evidence of a hiring freeze in this case.

The lack of discovery and development of the record is important for one very simple reason: If all a defendant has to do to get an age discrimination case dismissed on a motion to dismiss is show that the position was left unfilled, the potential for abuse is enormous. A defendant who wished to discriminate on the basis of age could simply not select the older candidate, declare the position un-filled or cancelled, and turn around the next day and post a "new" position (and then repeat this each time the older person applied). The defendant could then get any discrimination claim dismissed on the grounds that the position was left unfilled. Discovery, however, would reveal the pattern of non-selection.[3]

The development of the record is important in the present case because the Plaintiff sought directly relevant discovery before the EEOC, but was denied that discovery at the Defendant's urging. Among other requests, Plaintiff sought discovery of: 1) whether the SAO filled *other* GS scientist positions in the years before and after it failed to hire the Plaintiff, and the age and qualifications of those hired; and 2) whether other scientists similar in age to the Plaintiff have applied for and been denied GS positions at the SAO in the years before and after it failed to hire the Plaintiff. Were discovery to reveal that the SAO in fact filled numerous other similar grade GS scientist positions with younger candidates, the sole fact that the SAO left unfilled one position for which Dr. Stark applied would hardly be the basis for a fair resolution of his claim.

---

[3] As a number of courts have pointed out, there are circumstances in which a decision not to fill a position may be a pretext for discrimination. For example, a decision not to fill a position could be discriminatory if the position were withdrawn because all applicants were members of the protected class; or if the position was not withdrawn due to a lack of need or the phase-out of job responsibilities, and the employer later sought to fill the need. *See Singleton v Mukasey,* 2008 WL 2512474, at *4 (S.D.N.Y. 2008); *Carter v. George Washington University,* 387 F.3d 872, 883 (D.C. Cir. 2004).

In sum, the Defendant's motion to dismiss Plaintiff's ADEA claim must be denied. It is premised on a requirement that does not exist in the First Circuit, and on unpublished, inapposite cases from other circuits that were decided at the summary judgment stage -- after the development of the factual record that Plaintiff has not yet been permitted in this case.

**II.     Plaintiff Has a Valid Pendent Claim for Breach of the Covenant of Fair Dealing.**

Defendant argues that Plaintiff's second claim, his common law claim for breach of the covenant of good faith and fair dealing, should be dismissed for "multiple independent reasons," but those reasons all fail:

1.     Defendant argues first[4] that if Plaintiff's ADEA claim is dismissed, then his pendent common law claim under 28 U.S.C. § 1367 must be dismissed. However, if Plaintiff's ADEA claim is <u>not</u> dismissed, as argued above, 28 U.S.C. § 1367 plainly supplies jurisdiction for his pendent common law claims.

2.     Next, Defendant argues that Plaintiff's common law claims are "not justiciable" because the "ADEA provides the exclusive remedy for age discrimination in employment." The problem with this argument is that Plaintiff's common law claim does not allege age discrimination. As Defendant acknowledges (on p. 7-8 of his brief), plaintiff's common law claim alleges breach of the covenant of good faith and fair dealing, and the covenant in question has nothing to do with age. The covenant was to provide "tenure," that is, if Dr. Stark needed internal (as opposed to external) financial support, SAO would provide it. Complaint ¶ 31-32.

---

[4] Defendant denominates this both his "First" and his "Second" argument. Plaintiff responds to it only once.

3. Next, Defendant argues that Plaintiff's common law claim fails "because he has not alleged the existence of an enforceable contract." This is simply not true. In paragraph 31 of the Complaint, Plaintiff does allege the elements of a contract—offer, acceptance, and consideration. While Defendant may deny that a contract was formed, that is a factual issue not susceptible of decision on a motion to dismiss.

4. Defendant's last argument suffers from the same deficiency. Defendant argues that Plaintiff's common law claim for breach of the covenant of good faith and fair dealing is barred by the applicable six-year statute of limitations. However, the question of when the statute of limitations accrued, and started to run, is a factual question not susceptible of decision on a motion to dismiss. *See Commonwealth v. Purdue Pharma,* 2019 WL 5495716 (Mass. Super. Ct. 2019)(Sanders, J.)("[w]hen the cause of action 'accrues' for statute of limitations purposes is ordinarily a question of fact that cannot be determined from the pleadings alone"), *citing Riley v. Presnell,* 409 Mass. 239, 247 (1991). Here, Plaintiff claims that the breach occurred in 2016 when Dr. Alcock, required Dr. Stark to apply for the GS position (and then failed to even consider him for it). Complaint ¶ 32.

For all these reasons, Defendant's motion to dismiss Plaintiff's common law claim for breach of the covenant of good faith and fair dealing must be denied.

### III. Plaintiff's Claims for Damages Should Not Be Stricken

The Court need not rule at this time on Defendant's arguments about what damages are properly recoverable on the claims asserted in the Complaint. This is an issue that can be dealt with even at the time of jury instructions. To the extent, that the Court wishes to reach the issue now, Plaintiff concedes that compensatory damages for

pain and suffering and punitive damages are not recoverable under the ADEA. Plaintiff is, however, entitled to recover compensatory damages under his pendent common law claim for breach of the covenant of good faith and fair dealing. *See Linkage Corp. v. Trustees of Boston University,* 425 Mass. 1, 20 (1997). Thus, there is no need for the Court strike any of Plaintiff's claims for damages at this time.

Respectfully submitted,

For the Plaintiff,

___*Andrew Rainer*_____
Andrew Rainer (BBO #542067)
Brody, Hardoon, Perkins & Kesten LLP
699 Boylston Street, 12th floor
Boston, MA 02116
(617) 304-6052
arainer@bhpklaw.com

Dated: March 10, 2020

Certificate of Service

I hereby certify that, on the above date, I served the foregoing on defense counsel of record using the Court's ECF system.

___*Andrew Rainer*_____