UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ANTONY STARK, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 19-cv-12109-ADB |
| LONNIE G. BUNCH, Secretary of the Smithsonian Institute in his official capacity, | * * * | |
| Defendant. | * * | |

## **MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

BURROUGHS, D.J.

On October 11, 2019, Dr. Antony Stark ("Plaintiff") filed a complaint against Lonnie G. Bunch ("Defendant") in his official capacity as the Secretary of the Smithsonian Institute in which he alleged age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and breach of the implied covenant of good faith and fair dealing. [ECF No. 1 ("Compl.")]. Currently before the Court is Defendant's motion to dismiss Plaintiff's ADEA claim for failure to state a claim and to dismiss Plaintiff's contract claim for lack of subject matter jurisdiction. [ECF No. 8]. In the alternative, Defendant asks that the Court find that Plaintiff is not entitled to compensatory or punitive damages on his ADEA claim. [ECF No. 9]. For the reasons set forth below, Defendant's motion, [ECF No. 8], is GRANTED in part and DENIED in part.

I.  **BACKGROUND**

   A.  **Factual Background**

For purposes of this motion, the relevant facts are drawn from the complaint, [Compl.], and viewed in the light most favorable to the plaintiff.  See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (citations omitted).

Plaintiff was hired by the Smithsonian Astrophysical Observatory ("the SAO") in 1991. [Compl. ¶ 7].  At that time, Plaintiff held a grant from the National Science Foundation ("NSF"), which he had received to build the Antarctic Submillimeter Telescope and Remote Observatory. [Id. ¶¶ 9–10].  When Plaintiff first sought employment at the SAO in 1991, he was told he should not apply as a General Schedule ("GS") employee because of "a policy that federal scientists could not hold NSF grants."  [Id. ¶ 10].  Instead, the then-Director Irwin Shapiro ("Shapiro") offered Plaintiff a position as a "Smithsonian Trust" employee, telling him it would offer "parallel requirements and benefits (including job security) to federal GS scientists."  [Id.].  The Director told Plaintiff that if his NSF funding ran out in the future, Plaintiff "could either be transitioned to a federal GS position or fully funded by the Smithsonian Trust."  [Id.].  Plaintiff alleges that he only accepted the position because of this promise.  [Id.].

Plaintiff continued as a Smithsonian Trust employee for twenty-four years, during which time he "consistently received the highest possible Annual Performance Review ratings," and was promoted from "Astronomer" to "Senior Astronomer."  [Id. ¶¶ 7, 11].  While at the SAO, Plaintiff was a co-investigator and designer of the optics on the South Pole Telescope and he "collaborated in the optical design of a third-generation detector system."  [Id. ¶ 11(d)].

Sometime in the late 2000s, grant opportunities for building instruments became more difficult to secure.  [Id. ¶ 12].  Though Plaintiff sought salary support to continue using the

observational instruments that he had helped create, the SAO declined to pay him a salary and instead instructed him to apply for a GS position, [id. ¶¶ 12–13]. Plaintiff applied for an open GS-13 position but was rejected. [Id.]. In March 2016, Plaintiff applied for two more positions at the GS-14 and GS-15 levels. [Id. ¶ 14]. He was sixty-two years old when he applied and "more than qualified" for both positions. [Id. ¶¶ 14–15]. With regard to one of the positions, despite his experience and qualifications, Plaintiff was not selected as a finalist. [Id. ¶ 14].[1] Instead, six other candidates in their forties and fifties were selected as finalists. [Id.]. After Plaintiff complained to the SAO's director about not being a finalist, the SAO ended up not filling the position. [Id. ¶ 16].

### B. Procedural Background

Plaintiff timely initiated a charge of discrimination with the Equal Employment Opportunity Commission ("the EEOC"). [Id. ¶ 2]. After more than 180 days passed without a final action from the EEOC, on October 11, 2019, Plaintiff filed this complaint against Defendant alleging a violation of the ADEA (Count I) and the state-law contract claim (Count II). [Id.]. On January 27, 2020, Defendant moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). [ECF No. 8]. Plaintiff opposed, [ECF No. 12], and Defendant replied, [ECF No. 15].

## II. LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all

---

[1] Although Plaintiff states that he applied for and was not selected to fill two positions, [Compl. ¶ 14], it is not clear which position is referenced in paragraphs 14 and 16, see [id. ("would be interviewing six other candidates . . . for the 'mid-career' scientist position"); id. ¶ 16 ("he was not included among the finalists for the 'mid-career' federal scientist position")].

3

reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019) (citations omitted). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible . . . ." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)). "The plausibility standard invites a two-step pavane." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Secondly, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

In evaluating a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court must determine whether the facts as alleged in the complaint, "taken at face value," support subject matter jurisdiction. Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017). The Court "appl[ies] a standard of review 'similar to that accorded to a dismissal for failure to state a claim' under subsection 12(b)(6)." Rodriguez v. Mass. Parole Bd., No. 16-cv-11113, 2017 U.S. Dist. LEXIS 24705, at *5–6 (D. Mass. Feb. 22, 2017) (quoting Menge v. N. Am. Specialty Ins. Co., 905 F. Supp. 2d 414, 416 (D.R.I. 2012)). The Court must "accept the factual averments of the complaint as true, and construe those facts in the light most congenial to [Plaintiff's] cause." Royal v. Leading Edge Prods., 833 F.2d 1, 1 (1st Cir. 1987). "Dismissal can be justified only if it clearly appears that no colorable hook exists upon which subject matter jurisdiction can be hung." Id.

### III. DISCUSSION

#### A. ADEA Claim

Defendant argues that Plaintiff's ADEA claim should be dismissed for failing to plead an essential element of an age discrimination claim: that the position for which he applied was filled. [ECF No. 9 at 5–6]. Plaintiff maintains that he is not required to prove this element. [ECF No. 12 at 4–5].

"The ADEA makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" Velez v. Thermo King de P. R., Inc., 585 F.3d 441, 446 (1st Cir. 2009) (quoting 29 U.S.C. § 623(a)(1)). Because Plaintiff has not alleged any "direct evidence of discriminatory animus . . . , the burden of producing evidence is allocated according to the now-familiar McDonnell Douglas

5

framework." Greenberg v. Union Camp Corp., 48 F.3d 22, 26 (1st Cir. 1995) (first citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973); then citing Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 719 (1st Cir. 1994)).

> First, the plaintiff must make out a prima facie case of discrimination. The burden then shifts to the defendant to present a legitimate, non-discriminatory reason, sufficient to raise a genuine issue of material fact as to whether it discriminated against the employee, for the employment decision. Finally, the burden is placed on the plaintiff to demonstrate that the non-discriminatory reason is mere pretext and that the real reason was discrimination.

Quinones v. Houser Buick, 436 F.3d 284, 289 (1st Cir. 2006) (citing McDonnell Douglas, 411 U.S. at 802).

The Supreme Court has held, however, that "an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002); see Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 54 (1st Cir. 2013) ("[T]he Swierkiewicz holding remains good law . . . . This conclusion is bolstered by the fact that the Twombly Court, which first authoritatively articulated the plausibility standard, cited Swierkiewicz with approval." (citing Twombly, 550 U.S. at 569–70)). Rather, at the motion to dismiss stage, "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim." Rodríguez-Reyes, 711 F.3d at 54. "Although a plaintiff must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial—in a discrimination case, the prima facie standard—[]he need not plead facts sufficient to establish a prima facie case." Id.

Accordingly, although not dispositive, the Court will use the prima facie standard as a "prism" to examine the plausibility of Plaintiff's claim. See Rodríguez-Reyes, 711 F.3d at 54. The first three elements of a prima facie case "[i]n an age discrimination case for failure to hire where there is no direct evidence of age animus" are relatively well-settled: "(1) [he] is a

member of a protected class, (2) [he] applied and was qualified for the position in question, [and] (3) that despite . . . [his] qualifications, [he] was rejected . . . ." Gonzalez-Pagan v. VA Ctr., No. 14-cv-01795, 2018 U.S. Dist. LEXIS 54790, at *11–12 (D.P.R. Mar. 27, 2018) (quoting Rodriguez v. Sears Roebuck De P.R., Inc., 367 F. Supp. 2d 216, 223 (D.P.R. 2005)); see also Johnson v. Allyn & Bacon, Inc., 731 F.2d 64, 70 (1st Cir. 1984) ("The plaintiff must show by a preponderance of the evidence: (1) that he or she is within a class protected . . . ; (2) that he or she applied for a job for which the employer was seeking applicants and for which he or she had the requisite qualifications; (3) that he or she was rejected . . . ."). Plaintiff claims that he was sixty-two years old when he applied for the positions, "was more than qualified" for the positions, and was not selected for either. [Compl. ¶¶ 14–15]. Defendant does not dispute that Plaintiff has alleged sufficient facts to satisfy the first three elements. See [ECF No. 9 at 5–7].

Whether Plaintiff has pled sufficient facts to meet the fourth element, however, is in dispute. [ECF No. 9 at 5–6; ECF No. 12 at 4–5]. As another district court within this Circuit has recently observed, the parties' disagreement about whether Plaintiff has pled the fourth element parallels unsettled case law. Gonzalez-Pagan, 2018 U.S. Dist. LEXIS 54790, at *12. "Within the First Circuit, some courts have stated that the fourth [and final] element is that the position remained open and the employer continued to seek to hire for that position and other courts have required that someone else actually be hired." Id. (collecting cases). Compare Skowronski v. Seqirus, Inc., No. 19-cv-11893, 2020 U.S. Dist. LEXIS 107388, at *3 (D. Mass. June 18, 2020) (reciting the fourth element as showing that, "after rejection, the position remained open and the employer continued to seek applicants from persons of the plaintiff's qualifications"), and Boyajian v. Starbucks Corp., 587 F. Supp. 2d 295, 304 n.4 (D. Me. 2008) (describing the fourth element as requiring a plaintiff to show "that, after her rejection, the position remained open and

7

the employer continued to seek applicants with plaintiff's qualifications"), with Meléndez v. SAP Andina y del Caribe, C.A., 518 F. Supp. 2d 344, 359 (D.P.R. 2007) (restating the fourth element as requiring plaintiff to prove "that the employer hired someone younger"), and Joyce v. Postmaster Gen., 846 F. Supp. 2d 268, 287 (D. Me. 2012) (describing generally the fourth element for a prima facie claim of failure to hire in a case involving an ADA claim, an ADEA claim, and a gender-based Title VII claim as showing "that a person possessing similar or inferior qualifications was hired").

Given the uncertainty in the case law as to the fourth element of an ADEA failure to hire claim, the Court concludes that Plaintiff has stated a plausible claim if he has alleged either that the position remained opened after he was rejected or that someone else was hired. The Court's approach, allowing Plaintiff to meet either version of the element, comports with Supreme Court precedent, which "has made it abundantly clear that McDonnell Douglas was intended to be neither 'rigid, mechanized, or ritualistic,' . . . nor the exclusive method for proving a claim of discrimination . . . ." Loeb v. Textron, Inc., 600 F.2d 1003, 1017 (1st Cir. 1979) (first quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 567 (1978); then citing Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 324 (1977)). "As the facts necessarily will vary from case to case, 'this standard is not inflexible.'" Dowd v. Northrop Corp., No. 90-cv-01990, 1991 U.S. App. LEXIS 15038, at *3 n.2 (1st Cir. June 17, 1991) (quoting Tex. Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 n.6 (1981)).

The parties agree that the position was never filled. [Compl. ¶ 16; ECF No. 9 at 4]. Plaintiff, however, alleges that the position remained opened after he was not selected as a finalist, as six younger candidates in their forties and fifties were selected for interviews. [Compl. ¶ 14]. Therefore, the hiring process clearly continued after Plaintiff's non-selection.

8

See Johnson, 731 F.2d at 70 (listing the fourth element in an ADEA claim as showing "that the employer continued to seek applicants with his or her qualifications"); Bradley v. England, 502 F. Supp. 2d 259, 269 (D.R.I. 2006) (finding two vacancies did not remain open after all applicants were informed of vacancies' cancellation at the same time).[2]

"While establishing a prima facie case under the McDonnell Douglas framework is not a heavy burden, it does require 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion.'" Carrasco-Lozada v. Shinseki, No. 12-cv-01736, 2013 U.S. Dist. LEXIS 137811, at *15 (D.P.R. Sep. 24, 2013) (alterations in original) (quoting O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996)); see Wiener v. Polaroid Corp., 790 F. Supp. 363, 366 (D. Mass. 1992) (requiring for the fourth element "that plaintiff show that the employer's decision 'occurred under circumstances giving rise to an inference' of discrimination" (quoting Pena v. Brattleboro Retreat, 702 F.2d 322, 324 (2d Cir. 1983))). In Gorres v. University of Rhode Island, the court relied on Wiener v. Polaroid Corp. in a reverse discrimination case where, after the top-choice female candidate for a tenure track professorship declined the position, the search was subsequently closed without the job being offered to either of the two remaining male candidates. No. 04-cv-0319T, 2006 U.S. Dist. LEXIS 63877, at *8, *25 (D.R.I. Feb. 3, 2006). The court found that, because a jury could find

---

[2] "[A]n age difference of less than five years is insufficient to support a prima facie case of age discrimination." Williams v. Raytheon Co., 220 F.3d 16, 20 (1st Cir. 2000); see also Lopez-Rosario v. Programa Seasonal Head Start/Early Head Start de la Diocesis de Mayaguez, 245 F. Supp. 3d 360, 379 (D.P.R. 2017) ("The First Circuit Court of Appeals has not set a bright line rule as to age difference . . . but has outlined that a three-year age difference is insignificant while a seven-year age difference is significant."). As the candidates who were in their forties were clearly more than five years younger than Plaintiff, the Court will assume that there was at least a five-year age gap. See Gilbert, 915 F.3d 74, 80 (1st Cir. 2019) (noting that courts "draw[] all reasonable inferences in favor of the plaintiff").

that after the female candidate declined the offer, the remaining two candidates were considered and rejected, the facts supported an inference of discrimination.  Id. at *30.

Using the prima facie standard as a prism through which to view Plaintiff's allegations, Rodríguez-Reyes, 711 F.3d at 54, the Court finds that Plaintiff has plausibly alleged that Defendant's decision not to hire anyone was made after Defendant selected younger candidates as finalists and rejected Plaintiff, and after Plaintiff questioned his supervisor about the rejection. [Compl. ¶¶ 14, 16].  As alleged, the facts give rise to an inference of discrimination.  See Sanchez v. Puerto Rico Oil Co, 37 F.3d 712, 720 (1st Cir. 1994) ("Once a prima facie ADEA case has been established under the McDonnell Douglas framework, an inference of discrimination arises.").  Defendant's motion to dismiss Plaintiff's ADEA claim, [ECF No. 8], is therefore DENIED.

### B. State-law Contract Claim

Defendant has also moved to dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing on the grounds that this Court does not have jurisdiction, that the claim is non-justiciable, that Plaintiff has failed to sufficiently allege a contract, and that the claim is time-barred.  [ECF No. 9 at 7–9].  Plaintiff counters that this Court has jurisdiction over these claims through supplemental jurisdiction, that he has alleged a contract, and that his complaint is not time-barred.  [ECF No. 12 at 7–8].

Plaintiff's complaint relies on supplemental jurisdiction to provide subject matter jurisdiction over his state-law claim.  "The doctrine of supplemental jurisdiction, however, is not a waiver of sovereign immunity nor does it expand the power of courts in terms of the parties over whom it may exercise jurisdiction."  McLellan Highway Corp. v. United States, 95 F. Supp. 2d 1, 15 (D. Mass. 2008).  "Absent a waiver of sovereign immunity, courts are totally lacking in

jurisdiction to entertain actions against the United States." Coggeshall Dev. Corp. v. Diamond, 884 F.2d 1, 3 (1st Cir. 1989) (citing United States v. Sherwood, 312 U.S. 584, 586 (1941)).

Plaintiff has named the Secretary of the Smithsonian Institute as a defendant in this matter and is seeking monetary damages. "A suit against a government actor in his or her official capacity is the same as a suit 'against [the] entity of which [the] officer is an agent.'" Tyler v. Massachusetts, 981 F. Supp. 2d 92, 95 (D. Mass. 2013) (alterations in original) (quoting Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)). Courts "ha[ve] concluded that the Smithsonian [i]s a federal agency within the meaning of such [immunity-waiving] statutes as the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491 . . . ." O'Rourke v. Smithsonian Inst. Press, 399 F.3d 113, 116 (2d Cir. 2005); see Misrai v. Smithsonian Astrophysical Observatory, 96 F. Supp. 2d 29, 31 (D. Mass. 2000) (finding that the Smithsonian is a federal agency under Title VII). Further, "[t]he general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or compel it to act." Dugan v. Rank, 372 U.S. 609, 611, 620 (1963) (finding "suit against the petitioning local officials of the Reclamation Bureau is in fact against the United States"); see also Sibley v. Ball, 924 F.2d 25, 28 (1st Cir. 1991) (finding that "when a suit against the Secretary of the Army, or the Navy, seeks a money judgment, it is in substance a suit against the United States"). The Court thus finds that Plaintiff is, in effect, bringing his suit against the United States.

The Tucker Act waives sovereign immunity and gives the Federal Court of Claims jurisdiction over "any claim against the United States founded . . . upon any express or implied contract with the United States . . . ." Glaskin v. Klass, 996 F. Supp. 67, 70 (D. Mass. 1998)

11

(quoting 28 U.S.C. § 1491(a)(1)).  In contrast, the Little Tucker Act, 28 U.S.C. § 1346(a)(2), gives district courts concurrent jurisdiction with the Federal Court of Claims over "any claim against the United States . . . upon any express or implied contract with the United States," as long as that claim does "not exceed $10,000 in amount."  Id. (first quoting 28 U.S.C. § 1491(a)(1); then quoting 28 U.S.C. § 1346(a)(2)).[3]

Plaintiff's claim that Defendant breached the covenant of good faith and fair dealing is a contract claim.  See Bateman v. FDIC, 112 F. Supp. 2d 89, 93 (D. Mass. 2000) ("The covenant [of good faith and fair dealing] is a fixture of contract law . . . ."); see also Seymore v. Johnson, No. 14-cv-12324, 2015 U.S. Dist. LEXIS 144334, at *19–20 (D. Mass. Oct. 23, 2015) (denying motion to dismiss a claim for breach of the covenant of good faith and fair dealing where the plaintiff had satisfied the pleading requirements of the Little Tucker Act).  Because, under the Little Tucker Act, this Court's jurisdiction over a contract claim against the United States is dependent on an amount in controversy, "it is incumbent upon [P]laintiff to allege either that he seeks monetary damages in an amount less than $10,000.00, or specifically waive any monetary recovery in excess of the jurisdictional limit."  Diaz v. Johnson, No. 17-cv-11645, 2019 U.S. Dist. LEXIS 71457, at *10–11 (D. Mass. Apr. 29, 2019).

In addition to seeking damages of less than $10,000.00 for this Court to have jurisdiction over this claim, "[Plaintiff] bears the burden of proving the existence of a contract with the United States, and . . . must show that there is 'something more than a cloud of evidence that could be consistent with a contract to prove a contract and enforceable contract rights.'"

---

[3] "The substance of the Tucker Act is identical to that of [the] Little Tucker Act . . . .  Moreover, Federal Circuit Court decisions with respect to the Tucker Acts are binding on this Court."  United States v. Zajanckauskas, 346 F. Supp. 2d 251, 255 n.2 (D. Mass. 2003) (analyzing the application of Kania v. United States, 227 Ct. Cl. 458 (1981) to a plaintiff's Little Tucker claim).

Soliman v. United States, No. 17-18C, 2017 U.S. Claims LEXIS 1034, at *9 (Fed. Cl. 2017) (quoting D & N Bank v. United States, 331 F.3d 1374, 1377 (Fed. Cir. 2003)). The elements of an express or implied contract with the United States are the same, and require "[t]he party alleging a contract [to] show a mutual intent to contract including an offer, an acceptance, and consideration passing between the parties." Thermalon Indus. v. United States, 34 Fed. Cl. 411, 414 (1995). "In addition, the party [alleging the contract] must demonstrate that the government representative who entered or ratified the agreement had authority to bind the United States in contract." Id.

"A government official's authority to bind the United States must be express or implied." Soliman, 2017 U.S. Claims LEXIS 1034, at *9 (citing Roy v. United States, 38 Fed. Cl. 184, 187–89 (1997)). "A [g]overnment agent possesses express actual authority to bind the Government in contract only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms." SGS-92-X003 v. United States, 74 Fed. Cl. 637, 651 (2006) (citing Tracy v. United States, 55 Fed. Cl. 679, 682 (2003)). A government official has implied authority "when the employee cannot perform his assigned tasks without such authority and when the relevant agency's regulations do not grant the authority to other agency employees." Id. at 652.

"It is well-settled that Tucker Act jurisdiction may be premised on an employment contract, as well as on one for goods and services . . . ." Charnetski v. United States, 111 Fed. Cl. 185, 188 (2013) (citation omitted); see also Kania v. United States, 227 Ct. Cl. 458, 465 (1981) (noting that a contract between the government and a government employee is possible). However, "it is presumed that 'absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-

13

contractual relationship with the government.'" Charnetski, 111 Fed. Cl. at 188 (quoting Chu v. United States, 773 F.2d 1226, 1229 (Fed Cir. 1985)); see also Refaei v. United States, 129 Fed. Cl. 1, 13 (2016) ("In other words, there is a 'presumption that federal employees hold their positions pursuant to appointment[ ] rather than by contract.'" (quoting Calvin v. United States, 63 Fed. Cl. 468, 472 (2005) (citation omitted))), aff'd, 725 F. App'x 945 (Fed. Cir. 2018). If Plaintiff's "employment was by 'appointment,' a breach of contract action against the government would be precluded." Soliman, 2017 U.S. Claims LEXIS 1034, at *10–11 (citing Hamlet v. United States, 873 F.2d 1414, 1417 n.5 (Fed. Cir. 1989)). "When determining whether a government employee is serving by contract or appointment, the court looks to the relevant statutory language and implementing regulations, as well as to the hiring documents." Refaei, 129 Fed. Cl. at 14.

Given the presumption that federal employees serve by appointment, to adequately allege a contract, Plaintiff must plead facts beyond his present allegation that Shapiro made an oral promise to the effect that Plaintiff's position would be "as secure as tenure." [Compl. ¶ 10]. Plaintiff has neither provided hiring documents nor identified applicable legislation indicating that his position was not by appointment. See Charnetski, 111 Fed. Cl. at 188. Thus, Plaintiff has not overcome the presumption. See Soliman, 2017 U.S. Claims LEXIS 1034, at *15–16 (finding on a motion to dismiss that the plaintiff was employed by appointment and his contract claim was jurisdictionally precluded where the position advertisement referred to the position as

an "appointment" and the plaintiff "fail[ed] to identify any legislation that would overcome the presumption that his employment was by appointment").[4]

Even assuming an offer, acceptance, and consideration, Thermalon Indus., 34 Fed. Cl. at 415, Plaintiff has not sufficiently alleged that Shapiro had the express or implied authority to make a binding contract, which is an essential element of a contract claim against the United States. See id. at 414. It is not clear from the Complaint what Shapiro's responsibilities were, and thus it is not possible to determine whether entering into an employment contract would be within his job duties. See SGS-92-X003, 74 Fed. Cl. at 652. Thus, because the Complaint has not alleged the existence of a contract entered into by a person with implied or actual authority to bind the government, the Court cannot conclude that it has subject matter jurisdiction over the breach of implied covenant claim. See Refaei, 725 F. App'x at 951 (affirming dismissal where the plaintiff had failed to establish that the government actor had authority to make a binding employment contract).

Finally, Plaintiff has not alleged a specific amount of damages. In order for the Court to exercise jurisdiction under the Little Tucker Act, "it is incumbent upon [P]laintiff to allege either that he seeks monetary damages in an amount less than $10.000.00" or to waive damages over that amount. Diaz, 2019 U.S. Dist. LEXIS 71457, at *10–11. Because Plaintiff has failed to plead an amount of damages under $10,000.00 on his contract claim, this Court does not have

---

[4] Under different circumstances, the Court could potentially find a federal research position to be contractual. See Thermalon Indus., 34 Fed. Cl. at 415 (finding that the solicitation of grant proposals for funding and the acceptance and beginning of research satisfied the requirements of offer and acceptance for a government contract and that the plaintiff's receipt of funding and the government's right to, *inter alia*, royalty-free licensing for any intellectual property discovered from plaintiff's research was sufficient consideration).

15

jurisdiction over his claim. Id. at *11 (granting motion to dismiss where the complaint did not plead a "specific sum as damages").

As a result of the deficiencies described above, Plaintiff's claim for Defendant's breach of the implied covenant of good faith and fair dealing is dismissed without prejudice. Before attempting to amend the complaint, Plaintiff should consider whether he can satisfy the pleading requirements of the Little Tucker Act as to the existence of a contract and the amount of damages he is seeking on the claim.[5]

### C. Request for Compensatory and Punitive Damages

Lastly, Defendant argues that, if the case is not dismissed, the Court should find that Plaintiff is not entitled to compensatory or punitive damages on his ADEA claim. [ECF No. 9 at 9–10]. Although Plaintiff asserts that the Court need not address the issue at this stage, he "concedes that compensatory damages for pain and suffering and punitive damages are not recoverable under the ADEA." [ECF No. 12 at 8–9]; see Collazo v. Nicholson, 535 F.3d 41, 44 (1st Cir. 2008) ("[I]t is well-established that the [ADEA] does not allow compensatory damages for pain and suffering."); Torres v. Universal Facilities Servs., No. 09-cv-01654, 2010 U.S. Dist.

---

[5] Defendant also argues that the contract claim is time-barred because Plaintiff alleged that, in the late 2000s, he was denied salary support and subsequently applied for and was not selected for a GS position. [ECF No. 9 at 8–9]. Defendant claims that the breach of contract claim accrued then, which would take the claim outside of the six-year statute of limitations for contract claims. [Id.]. Although a contract claim generally accrues when the contract is breached, "[a]n exception to this general rule is the 'discovery rule,' which provides that a claim accrues when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the factual basis for the cause of action. The standard is an objective one . . . ." Power Control Devices, Inc. v. Orchid Techs. Eng'g & Consulting, Inc., 968 F. Supp. 2d 435, 441 (D. Mass. 2013) (citation omitted). It is not clear when or if a contract was in fact breached or whether, if breached in the 2000s, the breach was "unknowable." "Where compliance with a statute of limitations is at issue, 'factual disputes concerning when a plaintiff knew or should have known of his cause(s) of action are to be resolved by the jury.'" Patsos v. Albany Corp., 741 N.E.2d 841, 847 (Mass. 2001) (quoting Riley v. Presnell, 565 N.E.2d 780 (Mass. 1991)).

16

LEXIS 156388, at *9 (D.P.R. Feb. 4, 2010) ("The ADEA, however, does not permit punitive damages. Consequently, [the plaintiffs'] request for punitive damages must be dismissed . . . ." (citing Tapia Tapia v. Henderson, No. 99-cv-02408, 2001 U.S. Dist. LEXIS 25153, at *6–7 (D.P.R. Apr. 23, 2001))). Because the ADEA does not allow for either form of damages, the Court finds that Plaintiff is not entitled to punitive or compensatory damages on his ADEA claim.

## IV. CONCLUSION

Accordingly, Defendant's motion to dismiss, [ECF No. 8], is GRANTED in part and DENIED in part. Count II, a claim for breach of the implied covenant of good faith and fair dealing, is dismissed without prejudice.

**SO ORDERED.**

July 30, 2020                                               /s/ Allison D. Burroughs
                                                            ALLISON D. BURROUGHS
                                                            U.S. DISTRICT JUDGE